IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAMLET GARCIA, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **BUCKS COUNTY JUSTICE CENTER,** | : | **NO. 17-3381** |
| et al. | : | |

## MEMORANDUM

MCHUGH, J.                                                                                               SEPTEMBER 18, 2017

Plaintiff Hamlet Garcia, Jr. filed this civil action against numerous defendants, essentially based on his arrest and conviction, and the conditions in which he was imprisoned in Bucks County. The gist of his complaint is that his rights were violated in various respects in connection with his four-year experience with the criminal justice system. For the following reasons, the Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint. Plaintiff will be given an opportunity to file an amended complaint.

I.      FACTS[1]

Plaintiff alleges that a police officer illegally searched his vehicle in December of 2012, and found cannabis. Plaintiff was charged with possession of a small amount of marijuana for personal use in the Bucks County Court of Common Pleas. *See Commonwealth v. Garcia*, Docket No. CP-09-CR-0002053-2013 (Bucks Cty. Ct. of Common Pleas). The criminal docket reflects that on March 4, 2014, plaintiff pled guilty and was given probation for one year, with

---

[1] The following factual allegations are taken from plaintiff's complaint and the public docket for his underlying criminal proceedings. The complaint contains numerous legalistic allegations—which are not entitled to any credit in assessing whether the complaint states a claim—as well as allegations that do not appear to relate to any basis for a legal claim. The Court has tried to focus on those allegations related to plaintiff's arrest, conviction, violation(s) of probation, and imprisonment to determine whether those operative facts give rise to a constitutional claim.

the option to close probation in six months if he paid his costs and did not receive any misconducts.

It appears that plaintiff did not pay his court costs and was charged with violating probation/parole. According to the docket, he was found was found guilty of that violation on March 3, 2016. *See id.* Plaintiff alleges that he was given a choice to either serve ninety days to eleven months in jail or agree to be placed on probation for one year. (Compl. ¶ 6.) Plaintiff pled guilty to avoid jail time; he alleges that he signed the plea agreement under duress.[2] According to the complaint, plaintiff was again arrested for violating probation/parole on December 1, 2016. It appears from the docket that he was incarcerated and released on December 21, 2016, after his court costs were paid in full.

The complaint provides details about plaintiff's criminal case and the conditions in which he was incarcerated. It is not necessarily clear when the events described occurred in relation to plaintiff's several arrests, so the Court has done its best to interpret what happened to plaintiff and when.

According to plaintiff, his car was illegally searched and towed, and he was taken to the 24th District in Philadelphia where he "was given little food/water, no hygiene supply, toilet papers, or a bed to sit/lay for the next 14 or so hours." (Compl. ¶ 19.) That allegation appears to relate to plaintiff's initial arrest in 2012. The next day, plaintiff was visited by an individual—presumably a public defender—who asked if plaintiff was interested in taking a plea. Plaintiff notes that he was unaware of the charges against him and did not agree to be represented by the public defender.

---

[2] Plaintiff also suggests that his plea is void because he reserved his rights under the Uniform Commercial Code and/or because he does not consent to a contract with the Commonwealth. There is no legal basis for any such arguments.

2

At arraignment, the prosecutor and a witness made statements with which plaintiff disagreed. Plaintiff asked the attorney representing him if he could get a new judge because the presiding judge was elderly and disabled; the attorney replied "no." At some point while the criminal proceeding was pending, plaintiff alleges that he was held for absconding. He claims that the judge accepted the prosecutor's recommendation to hold him for trial, and he was transferred to custody of the Bucks County Department of Corrections.

In custody, plaintiff "requested to be treated with the same respect and for religious purposes to have the proper instruments to remain clean throughout [his] stay." (Compl. ¶ 27.) He alleges that the "majority of [his] accommodations was in approximately a 15 X 18 feet 'program room' with upwards to (15+) inmates residing at a time –minimal ventilation and little supervision." (*Id.* ¶ 28.)

During his incarceration, plaintiff fell from the top bunk and landed on the back of his head. He was sent to the nurse's office, where he claims to have received "very little medical attention." (Compl. ¶ 32.) However, he also alleges that he was given a pill and put on medical watch for four days out of concern that he might have a concussion. Plaintiff contends that medical watch "consisted of being forced inside a cell 24 hours of the day with no communication or activity" and notes that he "was in a daze and spen[t] 75% or almost the day sleeping" because of the fall and his medication. (*Id.* ¶¶ 32-33.)

While on medical watch, plaintiff sent a letter to the administration "stating [his] rights and requirements during [his] stay as well as complaints about improper housing, safety, and health codes issues." (Compl. ¶ 34.) The next day, plaintiff was placed on psychiatric watch, which required him to abide by certain limitations until he spoke to a doctor about the concerns in his letter. Two days later, plaintiff spoke with a doctor, who asked if plaintiff was looking to hurt

3

himself; plaintiff was later released back to the program room where he was given a top bunk bed.

The complaint implies that plaintiff believes he was targeted because of his knowledge of the law. He alleges that on one evening, he was awakened by a correctional officer and told that a Sergeant wanted to see him. The Sergeant allegedly asked plaintiff about his knowledge of the law and "'reminded' . . . [him] that recruiting is against policy." (Compl. ¶ 38.) Plaintiff was then sent back to his cell.

A day before plaintiff was scheduled to have a hearing in his case, he was visited by a public defender named Christina King who indicated that she would be representing him. She informed plaintiff that he would be facing ninety days to eleven months in jail. Plaintiff asked whether he could go home and she responded in the negative. He then informed Ms. King that he wanted to represent himself at the hearing. The allegations concerning Ms. King appear to relate to plaintiff's most recent arrest and incarceration.

After the prosecutor made an opening statement at the hearing, plaintiff alleged that he signed the earlier plea agreement under duress. Ms. King, who was present at the hearing, interrupted plaintiff by informing the judge that plaintiff's step-father would pay his court costs in full if he were released that day. The judge agreed to that arrangement and released plaintiff pending payment. Plaintiff explains that, as a result of the above events, he has been "prosecuted for over 4 years due to a significantly small amount of cannabis" and served a total of ninety-one days in jail. (Compl. ¶ 47.)

Plaintiff initiated this civil action against the following defendants: (1) the Bucks County Justice Center; (2) Bucks County Adult Parole and Probation; (3) Bucks County Department of Correction; (4) Philadelphia 24th District Police Department; (5) Christina A. King, identified as

4

a Bucks County Public Defender; (6) Matthew D. Weintraub, identified as District Attorney of Bucks County; (7) Daniel B. Sweeney, identified as the Bucks County Chief of Prosecution; (8) Christopher A. Pirolli, identified as the Bucks County Acting Director of Corrections; (9) Sean R. Ryan, identified as the Bucks County Acting Director of Operations; and (10) Brian Hessenthaler, identified as the Bucks County Chief Operating Officer. He also identifies Robert D. Pollock, a deputy court administrator, as a defendant in the body of the complaint, although Pollock is not identified as a defendant in the caption in accordance with Federal Rule of Civil Procedure 10(a).

The complaint invokes and/or purports to raise claims under the Treaty of Peace and Friendship, Resolution 75, Sundry Free Moors Act, the Declaration on the Rights of Indigenous Peoples, possibly the Uniform Commercial Code, and other bodies of law that plaintiff believes are relevant due to his claimed Moorish heritage. Plaintiff also appears to be raising claims pursuant to 18 U.S.C. §§ 241 & 242 and other criminal statutes, as well as 42 U.S.C. §§ 1983, 1985 & 1986.

## II.   STANDARD OF REVIEW

The Court grants plaintiff leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an

---

[3] The Court initially concluded that plaintiff was capable of paying the fees in part because he represented that he would be paying an attorney $8,000 in connection with this case. However, plaintiff's subsequent submissions to this Court reflect that he is not capable of pre-paying the fees at this time. Accordingly, the Court will grant him leave to proceed *in forma pauperis*.

5

indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

To survive dismissal for failure to state a claim, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by*, *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Claims Based on Plaintiff's Moorish Heritage

The Court will dismiss as frivolous all claims based on treaties, declarations, and resolutions predicated on plaintiff's Moorish heritage. The Treaty of Peace and Friendship does not provide a basis for a civil cause of action. *See, e.g.*, *Sabirin-El v. Soc'y for Indus. Applied Mathematics*, No. CIV.A. 14-3961, 2014 WL 3346467, at *2 (E.D. Pa. July 8, 2014). Claims based on Resolution 75, the Sundry Free Moors Act, the Declaration on the Rights of Indigenous Peoples, the Uniform Commercial Code (UCC), other treaties pertaining to Moorish people, and the Zodiac Constitution, are likewise frivolous. Courts have repeatedly rejected such claims as lacking any legitimate basis in a civil lawsuit. *See Bey v. Hillside Twp. Municipal Ct.*, Civ. A. Nos. 11-7343 & 11-7351, 2012 WL 714575 (D.N.J. Mar. 5, 2012).

Looking past the Moorish jargon in plaintiff's complaint, it is apparent that plaintiff has some legitimate grievances with his experience in the criminal justice system. However, the complaint at times obscures the operative facts giving rise to those claims by referencing irrelevant bodies of law and/or describing plaintiff's version of Moorish history.

> The courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary—including the Judges in this District—expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary.

*Bey*, Civ. A. Nos. 11-7343 & 11-7351, 2012 WL 714575, at *7 (D.N.J. Mar. 5, 2012) (quotations omitted). As plaintiff's claims based on treaties, declarations, the UCC, or his alleged Moorish heritage are wholly without merit, the Court will dismiss those claims with prejudice. There is no basis for amendment of those claims.

### B. Claims Under Criminal Statutes

The complaint suggests that plaintiff intends to raise claims under 18 U.S.C. §§ 241 and 242, and various other criminal statutes. However, those criminal statutes do not give rise to a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (per curiam) ("[T]hese criminal statutes [18 U.S.C. §§ 241 and 242] provide no private right of action for use by a litigant such as Colon–Montanez."). Accordingly, if plaintiff is raising claims under criminal statutes, those claims are dismissed with prejudice as legally baseless; amendment of those claims would be futile.

### C. Civil Rights Claims Pursuant to 42 U.S.C. §§ 1985 & 1986

The complaint also suggests that plaintiff seeks to bring claims under 42 U.S.C. §§ 1985(3) and 1986. "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The complaint does not allege a plausible basis from with this Court could conclude that a conspiracy existed among the defendants. Additionally, plaintiff does not allege the type of race or class based discrimination that is required to state a claim under § 1985(3). *See Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). As plaintiff has not stated a claim under § 1985, he also cannot state a claim under § 1986. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 n. 5 (3d Cir.1994) (failure to state a § 1985 claim is fatal to his § 1986 claim).

### D. Civil Rights Claims Pursuant to 42 U.S.C. § 1983

The Court understands plaintiff to be raising constitutional claims arising out of his arrest, prosecution, conviction, and imprisonment, as well as claims challenging the conditions in which

he was confined in Bucks County. As discussed below, there are several defects in his claims as currently pled.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Several of the defendants named in the complaint are not considered "persons" for purposes of § 1983. The Bucks County Justice Center and Bucks County Adult Parole and Probation are essentially arms of the state that are not amenable to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989) (states are entitled to Eleventh Amendment immunity from claims under 42 U.S.C. § 1983 and are not "persons" for purposes of that provision); *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity.").

Additionally, the Philadelphia 24th District Police Department is not a legal entity separate from the City of Philadelphia that is subject to a § 1983 suit. *See Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005). Besides, to establish a basis for municipal liability against a City or a County, a plaintiff must allege facts indicating that a municipal policy or custom caused the claimed constitutional violations. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiff has not done so here. Accordingly, he has not pled any basis for a claim against a municipal entity, including the Bucks County Department of Correction. It is also not clear when and how Philadelphia police officers were involved in the events that occurred. If plaintiff's claims concerning Philadelphia police officers relate to his arrest in 2012 and his related confinement before his arraignment, his claims are barred by the two-year statute of

9

limitations. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 397 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.").

Plaintiff's claims against the individually named defendants also suffer from various defects. Plaintiff has sued the Bucks County District Attorney and the Bucks County "Chief of Prosecution," presumably for any involvement in his prosecution, but prosecutors are entitled to absolute immunity from such claims.[4] *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Plaintiff has also sued his public defender, but she is not a state actor for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (footnote omitted)).

Furthermore, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014). In other words, supervisors and high-ranking officials are not liable under § 1983 based solely on constitutional violations allegedly committed by their subordinates. However, supervisors may be liable for a constitutional violation if they established and maintained a policy, practice or custom that caused the constitutional violation, or if they participated in violating plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in their subordinates' violations. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir.

---

[4] Plaintiff's claims against those defendants also fail because he has not alleged how either of those defendants was involved in the violation of his constitutional rights.

2014), *reversed on other grounds, Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Plaintiff has not alleged how any of the remaining defendants—Christopher Pirolli, Sean Ryan, Brian Hessenthaler or Robert Pollack—violated his rights.

There are additional problems with plaintiff's claims. Plaintiff's guilty plea precludes him from challenging the constitutionality of his prosecution or his related imprisonment unless and until that conviction is overturned, vacated, or somehow invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" (footnote and citation omitted)). In other words, the existence of a conviction—whether on an underlying charge or a parole/probation violation—precludes plaintiff from challenging that conviction or the proceedings leading to the conviction unless the conviction is first invalidated. That is so even if plaintiff alleges his plea agreement is flawed.

Plaintiff may have a basis for a constitutional claim challenging the conditions in which he was confined, assuming he is challenging events that occurred within the two year period preceding the filing of his complaint.[5] For instance, plaintiff may be challenging the medical

---

[5] As noted above, a two-year statute of limitations applies to plaintiff's § 1983 claims. Accordingly, plaintiff cannot pursue claims that accrued more than two years before he filed this civil action on July 28, 2017, unless there is a basis for tolling. The statute of limitations is tolled during the time it takes a prisoner to exhaust administrative remedies in accordance with the Prison Litigation Reform Act. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("the PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies").

11

care he received after he fell from his bed and the fact that he was placed back on a top bunk bed after having fallen and sustained a concussion. However, he has not raised claims against any of the individuals responsible for treating him, and the complaint does not provide a basis for holding any of the named defendants liable for the conditions in the Bucks County Jail. Accordingly, the Court will allow plaintiff to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's complaint.[6] Plaintiff will be given leave to file an amended complaint in the event he can state a plausible basis for a claim against an appropriate defendant or defendants. An appropriate order follows, which shall be docketed separately.

United States District Judge

---

[6] Plaintiff's complaint is best understood as raising constitutional claims under § 1983. The other provisions of federal law cited by plaintiff do not appear to provide any plausible basis for a claim here. In the event plaintiff has any basis for claims under state law, the Court cannot exercise supplemental jurisdiction over those claim unless he can state a claim arising under federal law.

12