# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAMLET GARCIA, JR., : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | No. 17-3381 |
| : | |
| COUNTY OF BUCKS, et al., : | |
| Defendants. : | |

**McHUGH, J.**                                                                                                       July 25, 2018

## MEMORANDUM

This is a Section 1983 action brought by Plaintiff Hamlet Garcia, Jr., who is representing himself,[1] against Bucks County and its private provider of prison health services, the City of Philadelphia, and several individual defendants. His voluminous Third Amended Complaint includes twenty-seven separately styled claims. *See* ECF No. 13 [hereinafter "TAC" or "Complaint"]. Most of Garcia's claims are duplicative, unsupported by factual allegations, or lack a discernable legal basis. Accordingly, I will dismiss all claims against the individual defendants, the City of Philadelphia, and Bucks County's prison health provider, and most claims against Bucks County. However, Garcia has stated two plausible *Monell* claims against Bucks County related to overcrowding at the correctional facility and his repeated assignment to the top bunk in spite of his history of falling. I will therefore grant Defendants' pending Motions to Dismiss except as to those claims.

---

[1] Plaintiff states that he is representing himself "in Propria Persona, Sui Juris (not to be confused with nor substituted with Pro Se)" and in "Pro Per." TAC 1, 3. Regardless of Plaintiff's preferred label, I nevertheless abide by my duty to hold his uncounseled pleadings "to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(f), which has since been codified at 8(e) ("Pleadings must be construed so as to do justice.")).

1

## I. Factual Allegations

I have already limited the scope of Plaintiff's Complaint by dismissing all claims against his public defender, Christina King, any claim that undermines his guilty plea, and all claims arising from his arrests in December 2012 and February 2015. Order ¶¶ 1–3, Nov. 21, 2017, ECF No. 14. With that narrowing, his relevant factual allegations are as follows.

Plaintiff Garcia was in his car when he was stopped by Philadelphia Police on December 1, 2016. TAC 11. Although the police had originally stopped him for a broken tail light, the situation apparently escalated; Officers John Doe I and II "physically assaulted" Plaintiff, and one of the officers said "he['s] going for my gun." Plaintiff interpreted this statement as the officer's attempt "regain power" and "to establish a record that the continued use of force [was] necessary" to control Plaintiff. TAC 11–12. Although Garcia claims he had not been resisting arrest prior to the officer's statement, he also alleges that, upon hearing it, he "cooperated fully" to avoid what he feared could turn into use of deadly force by the officers. More police cars and officers appeared, including Sergeant Roe. Plaintiff asked to speak to a supervisor and informed the officers of his "reservation of rights,"[2] at which they purportedly laughed, intimidated, and disrespected him. He was ultimately arrested on a Bucks County warrant for a probation violation and his vehicle was searched. Garcia was then taken to the Philadelphia Police 24th district, where he was forced to share a bench with other detainees or lie on the floor, and

---

[2] Plaintiff alleges that he asserted this "reservation of rights" several times, first during his initial arrest and at various other points in his subsequent imprisonment. He does not elaborate on the nature of the rights he intended to reserve, but the statement seems to refer to rights under Section 3-308 of the Uniform Commercial Code, which Sovereign Citizens believe can "reduce or eliminate . . . vulnerabilities" under civil and criminal law. *See* J.M. Berger, *Without Prejudice: What Sovereign Citizens Believe*, George Washington University Program on Extremism 5 (June 2016), https://extremism.gwu.edu/sites/g/files/zaxdzs2191/f/downloads/JMB%20Sovereign%20Citizens.pdf; *see, e.g.*, Denise B. Holmes, *Court (Letter Rogatory to Chief Justice-Reservation of Rights)*, Freedom Documents (Jan. 25, 2012), https://keystoliberty2.wordpress.com//?s=reservation+of+rights&search=Go ("Since the Federal Corporation is just that, a corporation. It has no jurisdiction except with those that contract with it.").

received no toilet paper, no food, and no "proper hydration" for twelve hours. TAC 12. He was then transported by Bucks County sheriffs to Bucks County.

The next day, December 2, 2016, Garcia appeared before Judge Cepparulo and was represented, without Plaintiff's consent, by a public defender (unnamed in the Complaint). TAC 12–13. The judge decided that Plaintiff should be detained pending a hearing on his alleged probation violation—failure to pay court costs—and Plaintiff was transferred to the Bucks County Correctional Facility [hereinafter "BCCF"]. TAC 13, 17. Upon arrival, Plaintiff met with a "classification counselor" (Counselor John Doe) and told him that Plaintiff had two concerns that "need[ed] to be addressed." The first was that Plaintiff occasionally stuttered. The second he described this way: "I twist and turn when I sleep. [Is] there any safety bar attached on the bed?" TAC 13. The counselor replied that they had none.

For several days beginning December 2nd, Garcia was housed in a fifteen by eighteen foot "program room" with "fifteen plus inmates" and little ventilation. TAC 14. Plaintiff and the other inmates housed in the Program Room were forced to share a single toilet, not only with each other but also with "every other inmate in the housing unit," who frequently used the toilet.

On or around December 8th, Plaintiff fell from the top bunk and hit the back of his head, suffering an "obvious" injury. TAC 15. Officers and a nurse were called. Officer Jane Doe said "he was faking" and told him to get up immediately, "causing him to get up before he could willingly or properly do so." Garcia was sent to the nurse's office where he requested a second opinion from an outside facility. The nurses (Jane Does I–IV) denied the request, gave him a pill, and "[threw him] into [a] medical cage like a punished animal." He remained on medical watch for four days with a potential concussion, contained to his cell twenty-four hours a day with no activity. Garcia contends that this violated the handbook, which says people should not

be in a cell for more than twelve consecutive hours. Because Garcia had previously been told by a guard that he was not allowed to exercise, he was afraid to do so in his medical cell for fear of longer detainment. "As a result of the fall and pills" he was in a daze and slept most of the time. When Garcia told a guard (Doe VI) that he had terrible head pain after constant sleeping and inactivity, the guard said "[the danger of] sleeping on a concussion is an old myth and [Plaintiff] did not need to see a doctor." TAC 15.

During his time in the medical wing, Garcia sent a letter to "the administration" complaining about his poor housing, safety, and health. The next day, Plaintiff was placed in solitary confinement on psychiatric watch, which he perceived as a punitive response to his grievance letter. TAC 16, 32. On December 12th, a doctor (Jane Doe) asked him whether he was going to hurt himself. He said no, and she released him from psychiatric watch back to the program room, where he was again assigned to a top bunk despite his request for a bottom bunk. TAC 16. Around December 16th, Garcia was "finally placed in a proper cell." TAC 16. For a third time, his request for a bottom bunk was denied.

At one point, Garcia alleges he was attacked by two inmates and received another head injury. Guards stationed on the "top floor" witnessed the attack, and it took them about thirty seconds to stop it. Staff were either "powerless to intervene" sooner or "failed to do so." TAC 16.

On December 17th, Plaintiff was awoken by an officer, who led him to two sergeants (Roes I and II). The sergeants asked Garcia about his beliefs and explained that he had been identified as a Sovereign Citizen by his "autograph."[3] They reminded him that "recruiting [was]

---

[3] Presumably, this refers to Plaintiff's signature upon his intake to the facility. Plaintiff's preferred signature on court documents is a red thumbprint; his Complaint does not specify what, if anything, about his signature stood out to prison staff.

against policy" and said that a warning against recruitment was "standard procedure." TAC 16.

After almost three weeks of incarceration, Garcia appeared for a hearing on his alleged violation of probation. Plaintiff remained unable to pay his outstanding court costs, but one of his family members volunteered to pay. Plaintiff pled guilty, his family paid the costs, and he was released. As a result of the conditions of his confinement in Bucks County, Plaintiff identifies the following physical and emotional injuries: head trauma and injury, physical pain and suffering, humiliation, fear, embarrassment, and other emotional trauma. TAC 30, 33.

Plaintiff now brings more than two dozen claims, most sounding in § 1983, against Defendants Bucks County, the City of Philadelphia, Bucks County Sheriff Edward Donnelly, three Bucks County Commissioners, the Bucks Department of Correction, Bucks County's Director of Correction, Director of Personal Health, Director of Mental Health, and Warden, public defender Christina King, Bucks County's prison health provider, CFG Health Systems, LLC ["CFG"], unnamed doctors, nurses, corrections officers, and sergeants at BCCF, and unnamed officers and sergeants of Philadelphia. Plaintiff sues all individual defendants in their personal and official capacities, except Sheriff Donnelly, who is named only in his official capacity. Four Motions to Dismiss are pending, filed by CFG (ECF No. 19), Bucks County for the Department of Correction and Sheriff Donnelly (ECF No. 20), the individual named defendants (ECF No. 21), and the City of Philadelphia (ECF No. 29).

## II. Standard

Defendants seek dismissal of Plaintiff's Complaint under Rule 12(b)(6), which provides for dismissal where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). The Rules of Civil Procedure require a plaintiff to present "only a short and plain statement" of his claim in order to give the defendant "fair notice of what the

5

claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In considering a 12(b)(6) motion, the court must separate the factual and legal elements of a claim, accept all well-pleaded facts as true, and disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must then draw "all reasonable inferences" and view them in the light most favorable to the plaintiff. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the plaintiff has pled facts that allow the court to reasonably infer that the defendant is liable for the misconduct alleged, the claim is "plausible on its face" and the motion must be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Palakovic v. Wetzel*, 854 F.3d 209, 219 (3d Cir. 2017).

## III. Discussion

Most of Plaintiff Garcia's claims must be dismissed as barred by my previous Order, impermissible attempts to impose § 1983 liability on the City of Philadelphia and Bucks County through vicarious liability, unsupported by facts sufficient to state a claim, or not based on a cognizable legal theory. Pursuant to my Order of November 21, 2017, ECF No. 14:

- Plaintiff's Ninth Claim against public defenders Christine King and John Doe is dismissed with prejudice because public defenders are not state actors for purposes of § 1983. Order, ECF No. 14 (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)).

- To the extent that any of Plaintiff's claims relate to his arrests in December 2012 or February 2015, those claims are dismissed with prejudice as time-barred. *Id.*

- All claims that would necessarily invalidate Plaintiff's guilty plea are barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87. In this circuit, Plaintiff's guilty plea is treated the same as a conviction for purposes of *Heck*. *See Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) (holding that even a *nolo contendere* plea, which is not an admission of guilt in Pennsylvania, "must be treated the same as a conviction under *Heck*"). Accordingly, the following claims are dismissed without prejudice:[4] the false arrest and false

---

[4] Because Plaintiff appears to be a probationer, I need not address the troubling issue of whether *Heck* should apply to the claims of a § 1983 plaintiff who is no longer in any form of custody, and to whom habeas is, therefore, no longer available. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (applying *Heck* to bar the § 1983 claim of a plaintiff who was no longer entitled to habeas relief despite "the fact that, post-Heck, five Justices took the view in *Spencer v. Kemna*, 523 U.S. 1 (1998), that § 1983 relief should be available to

6

imprisonment components of Plaintiff's First Claim, all of his Second and Third Claims, the false arrest component of his Sixth claim, his Thirteenth and "Sixteen Claim" except as they relate to excessive force by the Philadelphia Police, and the false arrest and imprisonment components of his Eighteenth Claim.

In addition, Plaintiff's claims based on vicarious liability must be dismissed with prejudice, as the theory is impermissible under § 1983 against government entities like Philadelphia, Bucks, and CFG. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 578, 583 (3d Cir. 2003) (applying *Monell* to hold that private corporations providing health services to county correctional facilities "may not be held responsible under a theory of *respondeat superior* or vicarious liability"). This includes the vicarious liability component of Plaintiff's Eighteenth Claim (to the extent that it relies on § 1983), and all of Plaintiff's Nineteenth and Twentieth claims against Philadelphia, Bucks, and CFG. Relatedly, all claims against Sheriff Edward Donnelly, who is named in his official capacity, are dismissed as duplicative of the claims against Bucks County. *See Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)); Bucks County's Mot. Dismiss 1 n.1, 8 n.5, ECF No. 20 [hereinafter "Bucks MTD"].

The great majority of Plaintiff's claims must be dismissed for failure to alleged sufficient facts supporting them. Because Garcia has failed to alleged sufficient facts showing that conduct by any individual caused his alleged harm, all claims against the individual defendants—both named and unnamed—must be dismissed without prejudice. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (holding that, in claims against individual government defendants, § 1983 plaintiffs must show the defendants' "personal involvement in the alleged wrongdoing,"

---

address constitutional wrongs where habeas relief is no longer available.") (declining to follow *Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001)).

by alleging "personal direction or . . . actual knowledge and acquiescence" to the wrongdoing) (citation omitted).

As to the institutional defendants—Bucks, Philadelphia, and CFG—Plaintiff's factual allegations likewise fall short of supporting most of his claims. Rather than discuss each claim individually, which would be largely futile since many have no factual support at all, I highlight as examples three groups of claims, on which Plaintiff has made some factual allegations, in order to demonstrate their inadequacy. First, Plaintiff's "Twenty-Third Claim"[5] is for retaliation, but his factual allegations that could conceivably relate to retaliation, when taken together, fail to make out a claim. Plaintiff asserts that, after filing his grievance letter, he was "punished by a forced two day solitary confinement" in the form of psychiatric watch. TAC 23, 32. But Plaintiff also alleges that he had already been in solitary confinement while on concussion watch, TAC 15, so he has not alleged that he suffered an adverse action, as is required in § 1983 retaliation claims.[6] *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016), *cert. denied sub nom. Coutts v. Watson*, 137 S. Ct. 2295 (2017). He has likewise failed to allege any adverse action in his retaliation claim based on his classification as a Sovereign Citizen or warning from the sergeants against recruiting.[7] Second, Plaintiff's excessive force claims, while not barred by *Heck*, are likewise unsupported by sufficient facts. Plaintiff states that he was not resisting arrest but that two officers nonetheless "physically assaulted [him] and at one point to regain power through

---

[5] Not to be confused with his "Twenty-Three Claim," which appears immediately after his "Twenty-Third Claim." *See* TAC 62–64.

[6] Plaintiff does not attempt to identify the actor(s) responsible for his change from concussion watch to psychiatric watch, but to impose *Monell* liability on either CFG or Bucks, he would need to allege facts suggesting that those entities had a policy or custom of punishing inmates for protected behavior by placing them on psychiatric watch. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

[7] In his Fourth Claim, Plaintiff attempts to "reallege[] the treatment and discriminatory actions" related to his classification as a Sovereign Citizen on behalf of his fellow inmate, "Mr. Herbe." *See* TAC 43. But since Mr. Herbe is not a plaintiff in this action, Garcia may not make any allegations or claims on his behalf.

intimidation stated '…[he] going for my gun' [and] at that point [Plaintiff] cooperated fully . . . [and] was placed in the backseat of their vehicle." TAC 11. Even if I construe Plaintiff's statement about assault as a factual allegation rather than a legal conclusion, Plaintiff admits that he was "standing his ground" and not cooperating with the arrest at the time that force was used, and does not describe the nature or severity of the force. Finally, all of Plaintiff's discrimination-based claims fail because he does not allege that he is a member of a protected class, or include facts from which I can infer that he is. Because of these and other factual inadequacies, the following claims are dismissed, and those marked with an asterisk are dismissed with prejudice:

- the remainder of Plaintiff's First Claim (due process related to inadequate staffing)
- Fourth Claim (conspiracy to deprive Plaintiff of travel documents and segregate him)
- Fifth Claim (equal protection)
- Seventh Claim (improper care of property, 42 U.S.C. § 1982, relating to his car)
- Eighth Claim (conspiracy to interfere with civil rights, 42 U.S.C. § 1985(3),*[8] and neglect to prevent, § 1986)
- Tenth Claim ("42 U.S.C. Chapter 21D" [presumably referencing 42 U.S.C. § 2000dd, which creates protections for federal detainees and no private right of action])*
- Eleventh Claim (negligent hiring and retention)
- Twelfth Claim (intentional infliction of emotional distress)
- the remaining excessive force component of the Thirteenth Claim ("conspiracy against rights with national animus")
- Fourteenth Claim (excessive force)
- Fifteenth Claim (failure to intervene/protect detainees)
- the remainder of "Sixteen claim" as it relates to excessive force and as against the City of Philadelphia (*Monell*)[9]
- "Seventeen" Claim ("municipal liability, state created danger" related to excessive use of force)

---

[8] The § 1985(3) component of Plaintiff's Eighth Claim is dismissed with prejudice because I can conceive of no way that Plaintiff could cure his Complaint so as to state claim under that law, a portion of the Ku Klux Klan Act that prohibits race-based civil rights conspiracies. *See Farrar v. McNesby*, 639 F. App'x 903, 906 (3d Cir.), *cert. denied*, 137 S. Ct. 503 (2016) ("Section 1985(3) requires a plaintiff to allege that invidious racial or otherwise class-based discriminatory animus lay behind the Defendants' actions . . . . [T]he complaint contains no allegations which might show that the Defendants were motivated by racial animus.") (citing *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006)).

[9] Plaintiff's allegation that the Philadelphia Police held him for twelve hours without food, toilet paper, or adequate hydration is troubling, but he makes no claim against any individual, and has not identified any policy or custom that might give rise to *Monell* liability for the City.

- "Nineteenth Fourth [sic] Claim" (delay and denial of medical treatment)
- Twenty-First Claim (Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 [presumably referencing § 12132])[10]
- Twenty-Second Claim ("treatment of Nationalist[11] violates Title VI")*
- Twenty-Third Claim (First amendment claim based on "defendants' retaliation against their critics")
- "Twenty-Three" Claim (failure to provide adequate medical treatment against Bucks and CFG))
- Twenty-Four Claim (§ 1983 "systemic claim against City and County") except as it relates to constitutionally inadequate conditions of confinement by Bucks
- Twenty-Fifth Claim (deliberate indifference to pretrial detainees' medical needs against CFG only)
- "Twenty-Six" Claim (failure to adequately staff jail)

In addition to these dismissals for insufficient facts, I must also dismiss with prejudice Plaintiff's Sixth Claim, titled "abuse of authority/official oppression/prohibited personnel practice," as I can discern no cognizable legal theory behind it. He cites laws related to federal employee personnel policies (5 U.S.C. § 2302) and American Indians ("Title 18, Chapter 53") without connecting those laws to the facts of his case. If Plaintiff is attempting to suggest that Sovereign Citizens are entitled to the same protections as American Indians, that is a defect in his claim that cannot be cured.

As for Plaintiff's state tort claims, including his Eleventh Claim ("negligent hiring and retention") and Eighteenth Claim ("gross negligence, vicarious liability and negligence"), they also fail. Garcia's state tort claims against the Bucks County and Philadelphia Defendants must be dismissed with prejudice, as those defendants—political subdivisions created by the State—are immune from suit except where Pennsylvania's legislature has expressly waived immunity.

---

[10] Although Plaintiff alleges a potentially qualifying disability (stuttering), *see, e.g.*, *Medvic v. Compass Sign Co.*, 2011 WL 3513499, at *5 (E.D. Pa. 2011), he does not allege that he was discriminated against on that basis, or identify any accommodation that he requested and was denied.

[11] Plaintiff appears to use the terms "Nationalist" and "Sovereign Citizen" interchangeably. Again, as a male who has not alleged his race or that he was born in foreign country, Plaintiff does not fall into any protected category under Title VI. (The Pennsylvania state criminal docket identifies Plaintiff as "white" and, while that identifier is far from determinative, Plaintiff has made no allegation to the contrary.)

42 Pa. Cons. Stat. § 8541. Pennsylvania's Political Subdivision Tort Claims Act ["PPSTCA"] sets out eight areas of waiver, *i.e.*, exceptions to its governmental immunity, and none applies to Plaintiff's claims. *See* 42 Pa. Cons. Stat. § 8542. Defendant CFG argues that it, too, is protected by the PPSTCA, but cites no legal foundation for this argument. My own research yields no case law supporting CFG's assertion and several instances in which courts analyzed the merits of state tort claims against private health providers like CFG in county and state correctional facilities with no mention of a governmental immunity bar. *See, e.g.*, *Davis v. Corizon Health, Inc.*, 2015 WL 518263, at *4 (E.D. Pa. 2015) (analyzing the state tort claim of corporate negligence against a private corporation that provided health services to Philadelphia jails); *Classen v. Nutter*, 2017 WL 6017341, at *12 (E.D. Pa. 2017) (deciding several state tort claims brought against private entities that provided health and food services to Philadelphia's prison system); *Fox v. Horn*, 2000 WL 49374, at *8 (E.D. Pa. 2000) (predicting that Pennsylvania's Supreme Court would extend the doctrine of corporate negligence to a state prison private health providers); *Robinson v. Corizon Health, Inc.*, 2016 WL 1274045, at *11–*12 (E.D. Pa. 2016) (reviewing the merits of several state tort claims against a state prison private health provider).

However, although Plaintiff's state negligence claims against CFG are not barred by governmental immunity, I must nevertheless dismiss those claims. I have already dismissed Plaintiff's claims against individual CFG employees, so no state law claim against CFG based on vicarious liability can survive. And even if I were to construe Plaintiff's negligence claim against CFG as a corporate negligence claim, Plaintiff has not pled facts supporting that theory. *See Davis*, 2015 WL 518263, at *4. Accordingly, Plaintiff's state tort claims against CFG are dismissed without prejudice.

Having dismissed all claims against the individual defendants, Philadelphia, and CFG,

and most claims against Bucks County, Plaintiff Garcia is left with two viable claims against the institutional Bucks County Defendants. First, Plaintiff has alleged a plausible *Monell* claim for overcrowding at BCCF. Specifically, he alleges that he was housed for nearly two weeks with at least fifteen other inmates in a fifteen by eighteen foot room that was inadequately ventilated and that he was forced to share a single toilet with the entire housing unit.[12] Second, Plaintiff has plausibly alleged a policy of reserving bottom bunks for sick, elderly, or drug-dependent inmates, while denying bottom bunk requests by inmates who are likely to fall (or have already fallen) from BCCF's rail-less top bunks. In support, Plaintiff alleges that, despite immediately informing BCCF that he tossed in his sleep and requesting a "safety bar," he was told there were no bed rails and was assigned a top bunk—not once, but at least three times, including twice after he had fallen from the top bunk and received a concussion. He alleges that his repeated requests for a bottom bunk were denied because bottom bunks at BCCF are reserved for sick people, "Junkies," and the elderly. *See* TAC 16.

He asserts that these conditions violated his Eighth and Fourteenth Amendment rights. *See, e.g.*, TAC 26 ("[I]nmates are subject to unconstitutional prison conditions and overcrowding in violation of the Eighth and Fourteenth amendments . . . ."); TAC 30 (alleging that his "basic rights" as an inmate were violated, including the "right to humane facilities and conditions").[13]

---

[12] Plaintiff's allegations that he spent one night in a plastic "boat" bed and "an entire day" in the gym are not, alone, actionable.

[13] Garcia cites both the Eighth and Fourteenth Amendments but Defendants agree that Plaintiff was a pre-trial detainee subject to the stronger Fourteenth Amendment protections. *See* Bucks MTD 16–18 ("Under the Fourteenth Amendment, Plaintiff, as a pretrial detainee, had a clearly established constitutional right . . . .") (citation omitted); CFG MTD 16. I follow the parties and proceed as though the Fourteenth Amendment governs Plaintiff's rights—a view that I believe aligns with the Supreme Court's reasoning in *Morrissey v. Brewer*. *See* 408 U.S. 471, 482 (1972) (in setting out minimum due process requirements for parole revocation proceedings, stating: "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others . . . . [T]he liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Gagnon v.*

Although Plaintiff continues to struggle to set out a clear *Monell* claim in a self-contained count, I find that his "Twenty-Four Claim," titled "§ 1983 – Systemic Claim against City and County," coupled with his detailed factual allegations, adequately puts the Bucks County Defendants on notice of the claims against them. *See* TAC 65–66 (alleging that "the systemic deficiencies at Bucks . . . may also lead to . . . constitutionally inadequate conditions of confinement" and that "[a]s a direct and proximate result of the Defendants['] policies and their deliberate indifference, defendants violated Mr. Garcia['s] constitutional rights").

Defendant Bucks County objects that Garcia has not stated a valid *Monell* claim because he failed to specify the "allegedly offending policy" or "allege conduct by a municipal decisionmaker." Bucks MTD 9. As outlined above, I disagree and find that Plaintiff has specified two offending policies. And although Plaintiff does not name the individual municipal policymaker behind these policies, that information is unknowable to Plaintiff at this stage.[14] Moreover, there can be no doubt that the decision to house fifteen inmates in a single room for two weeks with a single toilet was not isolated happenstance but a deliberate decision by a Bucks County policymaker. Just as Plaintiff's repeated top bunk assignments, both before and after his fall and in spite of several requests, demonstrate that his top bunk assignment was not an anomaly, but the norm.

---

*Scarpelli*, 411 U.S. 778, 782 (1973) (extending the procedural protections for parolees set out in *Morrissey* to probationers).

[14] As I explained in *Davis v. City of Philadelphia*, "several courts in this circuit, recognizing *Monell* plaintiffs' lack of access to municipal policy information at this early [motion to dismiss] stage, have held that plaintiffs are not required 'to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies . . . .'" 284 F. Supp. 3d 744, 754 (E.D. Pa. 2018) (citing *Kenney v. Montgomery Cty.*, 2013 WL 5356862, at *7 (E.D. Pa., 2013) (DuBois, J.) and listing cases); *see also Ramos-Vazquez v. PrimeCare Med., Inc.*, 2010 WL 3855546, at *9 (E.D. Pa. Sept. 30, 2010) ("The allegations are 'conclusory' in the sense that it is reasonable for Plaintiff to conclude that the actions he complains of were undertaken pursuant to some policy, procedure or custom . . . . At this stage, Plaintiff cannot be expected to specify and articulate which policy, procedure or custom resulted in these actions; nor should he be expected to know which entity formulated each policy. Therefore, the Court holds that Plaintiff's allegations are sufficient to state a claim against the County . . . .").

Finally, although these *Monell* claims survive, Plaintiff's request for punitive damages against the County must be denied, as "municipalities are not subject to punitive damages" in § 1983 cases. *See Evans v. Port Auth.*, 273 F.3d 346, 356 (3d Cir. 2001).

       /s/ Gerald Austin McHugh
United States District Judge